# EXHIBIT A

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | SUMMONS | CASE NO. 25-015116-CZ Hon.Edward J. Joseph |
|---|---|---|

Court telephone no.:

| Plaintiff's name(s), address(es), and telephone no(s) Foreman, Josh | v | Defendant's name(s), address(es), and telephone no(s). PULTE FAMILY MANAGEMENT SJ LLC d/b/a SAINT JOHN'S RESORT |
|---|---|---|
| **Plaintiff's attorney, bar no., address, and telephone no** William Robert Frush 87016 6670 Kalamazoo Ave SE Grand Rapids, MI 49508 | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in ☐ this court, ☐ _____ Court, where it was given case number _____ and assigned to Judge _____.

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.   | **SUMMONS** |

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date 9/26/2025 | Expiration date* 12/26/2025 | Court clerk Yolanda Payne |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01 (3/23)        **SUMMONS**        MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105



STATE OF MICHIGAN

WAYNE COUNTY CIRCUIT COURT

JOSH FOREMAN

      Plaintiff,

                                CASE NO.: 25 -      - CZ

v.

PULTE FAMILY MANAGEMENT SJ LLC
d/b/a SAINT JOHN'S RESORT

      Defendant.

---

William R. Frush (P87016)
F&S LAW, PLLC
Attorney for Plaintiff
6670 Kalamazoo Ave., SE, Ste. D Unit 1118
Grand Rapids, MI 49508
wfrush@fslawpllc.com
(248) 675-9192

---

## **COMPLAINT**

      There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge. MCR 2.113(B)(3).

*/s/ William R. Frush*

      NOW COMES Plaintiff JOSH FOREMAN ("Plaintiff"), by and through his attorney F&S LAW, PLLC, and hereby states for his Complaint against Defendant PULTE FAMILY MANAGEMENT SJ LLC d/b/a SAINT JOHN'S RESORT (hereinafter "Defendant") as follows:

      This is an action for unlawful disability discrimination in violation of the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), MCL 37.1101 et seq., Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§12181-12189, and 28 C.F.R. Part 36. Plaintiff

1

is seeking injunctive relief, declaratory judgment, monetary damages, costs, and litigation expenses (including attorney's fees), as well as any other relief this Court deems fair and just.

**PARTIES**

1.      Plaintiff JOSH FOREMAN ("Plaintiff") is a natural person and resident of Lorain County in the State of Ohio.

2.      Plaintiff has a determinable physical impairment that substantially limits one or more major life activities, i.e., the major life activity of seeing, due to Plaintiff's blindness. Plaintiff thus qualifies as a member of a protected class of individuals under the PWDCRA, MCL 37.1103(d).

3.      Plaintiff is also a member of a protected class of individuals under the ADA pursuant to 42 U.S.C. § 12102(1)-(2), and 28 C.F.R. §§ 36.101 et seq.

4.      As a result of his disability, Plaintiff relies on screen-reading software and other assistive technologies/software to access digital content, including websites and mobile applications, and obtain goods and services on equal terms with the non-disabled public.

5.      Plaintiff uses a computer program called VoiceOver to utilize the internet. VoiceOver is a built-in screen reader on macOS that provides auditory descriptions of on-screen elements, permitting Plaintiff to navigate and interact with his computer (and the internet) using keyboard commands and spoken feedback.

6.      Defendant is a domestic limited liability company registered with the Department of Licensing and Regulatory Affairs and authorized to conduct business in the State of Michigan.

7.      Defendant's Resident Agent is Thomas M. Dixon, with a registered office street address at 500 Woodward Ave., Ste 3500, Detroit, MI 48226.

F&S Law

8.      At all relevant times, Defendant owned and operated a place of business at 44045 Five Mile Rd, Plymouth, MI 48170. Defendant's place of business, Saint John's Resort, offers a variety of luxurious accommodations to the public, including a hotel, fine dining locations, event and banquet venues, and a golf course.

9.      At all relevant times, Defendant also owned, maintained, operated and/or controlled the following website related to its places of business: https://www.saintjohnsresort.com/. (hereinafter "Website" or "the Website"). On the Website, Defendant advertises and offers their products and/or services to members of the public, including Plaintiff. The Website includes an online reservation system through which guests can access and reserve hotel rooms.

10.     The Website is designed to facilitate public access to Defendant's business, permitting consumers to (a) obtain information about Defendant's goods and services; (b) browse and purchase (i.e., reserve) Defendant's goods and services; (c) engage in transactions that are ultimately fulfilled by Defendant at its physical place of business.

11.     Defendant's physical place of business is a place of public accommodation under the PWDCRA because it is a business whose goods, services, facilities, privileges, advantages, and/or accommodations are extended, offered, sold, or otherwise made available to the general public. MCL 37.1301a.

12.     Because Defendant's Website is an integral extension of Defendant's business operations through which Defendant invites and solicits members of the general public—including Plaintiff—to browse and/or purchase Defendant's goods or services, Defendant's Website is also a place of public accommodation within the definition of the Michigan PWDCRA, MCL 37.1301(a).

F&S Law

3

13.    Defendant's place of business is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7)(A)-(B).

14.    Defendant's Website is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7)(A)-(B).

## JURISDICTION AND VENUE

15.    Plaintiff incorporates by reference paragraphs 1 through 14 as if fully stated herein.

16.    This Court has subject-matter jurisdiction over Plaintiff's claim under the Persons with Disabilities Civil Rights Act ("PWDCRA"), MCL 37.1101 et seq., because the amount in controversy exceeds $25,000.00, exclusive of costs, interest, and attorney fees.

17.    This Court also has subject-matter jurisdiction over Plaintiff's federal claim arising under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., because ADA claims are not subject to the exclusive jurisdiction of the federal courts and this Court has concurrent authority to hear such claims. MICH. CONST. art 6, § 13; MCL 600.605.

18.    Defendant is subject to personal jurisdiction in Michigan and Wayne County because Defendant is registered as a domestic limited liability company with the Department of Licensing and Regulatory Affairs and because Defendant is conducting a continuous and systematic part of its general business within the State of Michigan and Wayne County.

19.    Defendant has been and continues to commit the acts or omissions alleged herein, causing injury and violating the rights prescribed to Plaintiff by the PWDCRA.

20.    Defendant has been and continues to commit the acts or omissions alleged herein, causing injury and violating the rights prescribed to Plaintiff by the ADA.

F&S Law

4

21.     Venue is proper in this jurisdiction because Defendant resides in, has a place of business in, and conducts business in Wayne County and because a substantial part of the acts, omissions, injuries, and damages occurred in Wayne County.

## **FACTUAL BACKGROUND**

22.     Plaintiff incorporates by reference paragraphs 1 through 21 as if fully stated herein.

23.     Plaintiff was born in Grand Rapids, Michigan. Plaintiff, now living in Lorain County, OH, frequently returns to Michigan to visit members of his family, especially his grandparents, who live in Plymouth, MI.

24.     Plaintiff returns to Michigan approximately five times annually, and often stays at his grandparents' house, who arrange lodging and assist Plaintiff with any disability-related accommodations.

25.     On August 25, 2025, Plaintiff attempted to use Defendant's Website to reserve a hotel room at Saint John's Resort while planning a trip to visit his grandparents. Plaintiff did so to maintain his independence—booking his own lodging rather than relying on family members to arrange accommodations—while also allowing Plaintiff to enjoy Defendant's amenities during his stay.

26.     However, Plaintiff was met with several accessibility errors that prevented him from being able to appropriately navigate, use, or complete a reservation for a hotel room on Defendant's Website.

27.     On September 15, 2025, Plaintiff revisited the Website. Plaintiff again attempted to browse Defendant's Website to reserve a hotel room but the accessibility errors present on Defendant's Website denied Plaintiff full and equal access to the goods and services present therein.

F&S Law

5

28.     More specifically, Plaintiff attempted to access Defendant's hotel room reservation system through the "Book Now" button on the front page. Although clicking the "Book Now" button subsequently opened a calendar with "check-in" and "check-out" dates, the calendar and the options therein were not presented to Plaintiff because Defendant's Website is not formatted to properly interact with Plaintiff's screen reader. Therefore, Plaintiff was not aware that an editable box had opened because Defendant's Website failed to communicate that to Plaintiff.

29.     Plaintiff was forced to close the "Book Now" option and continue searching the Website for an accessible booking option. Defendant's Website then navigated Plaintiff to a calendar in which every single date was listed as a single item. This is an extreme error for screen readers. Instead of reading an individual date to Plaintiff, Defendant's Website presented every single date of the month to Plaintiff as a single option.

30.     Accordingly, Plaintiff was completely unable to select his desired check-in and check-out date from Defendant's Website.

31.     Defendant's Website also prevented Plaintiff from increasing the number of guests for a reservation. Although Defendant's Website includes what should be editable buttons to change this request, Defendant's Website is not properly coded to interact with screen readers to save Plaintiff's changes.

32.     The accessibility errors Plaintiff encountered during his visit prevented him from completing a reservation on Defendant's Website.

33.     Plaintiff then conducted an automated scan of Defendant's Website to determine the Website's compliance with Web Content Accessibility Guidelines ("WCAG"). The WCAG is the international standard for evaluating website accessibility for people with disabilities and is

published by the World Wide Web Consortium ("W3C"). From WCAG's website (https://www.w3.org/WAI/standards-guidelines/wcag/):

> Web Content Accessibility Guidelines (WCAG) 2 is developed through the W3C process in cooperation with individuals and organizations around the world, with a goal of providing a single shared standard for web content accessibility that meets the needs of individuals, organizations, and governments internationally.

34. WCAG is built on four core principles: (1) perceivable; (2) operable; (3) understandable; and (4) robust. Each principle is supplemented with guidelines providing basic goals that authors and developers should work toward to make digital content more accessible to users with different disabilities. In other words, WCAG provides objective, technical, and stable internet accessibility standards.

35. WCAG guidelines are divided into levels of compliance: Level A (pages with level A issues are unusable for some people); Level AA (pages with level AA issues are very difficult to use); and Level AAA (pages with level AAA issues can be difficult to use).

36. Websites are generally expected to maintain compliance with WCAG 2.1 Level AA or higher to be considered accessible. Level A issues—issues that are unusable for some people— are unacceptable as they prevent proper use of a website.

37. However, Defendant's Website employs the use of a "blocker," or software that prevents automated software technology from scanning their website for specific errors.

38. Defendant's "blocker" technology uses at least two levels of anti-bot technology that specifically prevents individuals or entities from determining whether Defendant's Website is compliant with the PWDCRA or ADA.

39. Plaintiff's manual auditing of the Website demonstrated severe accessibility errors that could not be otherwise confirmed with automated software auditing due to Defendant's

F&S Law

software. In other words, Defendant is aware of their Website's accessibility errors but is attempting to prevent verification of the same via automated testing.

40. The manually identified accessibility errors are not theoretical or technical irregularities. They directly interfered with Plaintiff's ability to locate, understand, and utilize the information necessary to complete an order on Defendant's Website, thereby denying Plaintiff full and equal access to Defendant's goods and services in violation of the PWDCRA and Title III of the ADA.

41. Defendant's Website offers accommodation, features, services, and amenities which should allow all members of the public (i.e., consumers) to access the goods and services offered by Defendant. The Website forms a nexus between online services and Defendant's brick-and-mortar place of business.

42. Defendant's Website functions as the principal gateway to its physical place of public accommodation. The Website does not exist as a standalone platform; rather, it is inextricably linked to Defendant's physical location by allowing consumers to engage in transactions that are ultimately fulfilled at Defendant's place of business.

43. Because the Website offers goods, services, accommodations, features, and/or amenities to the general public, the Website forms a nexus between the online services offered by Defendant and Defendant's brick-and-mortar places of business.

44. The Website is not merely informational but is a primary and integral extension of Defendant's physical places of public accommodation. By operating and offering the Website to the public, Defendant has subjected itself to the PWDCRA and ADA, which prohibit discrimination against individuals with disabilities and require Defendant to offer equal access to the goods and services offered by Defendant's place of public accommodation.

F&S Law

45.     Defendant's failure to operate and/or maintain its Website in a way that is accessible to blind users constitutes a denial of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations otherwise offered by Defendant's physical place of public accommodation in violation of the PWDCRA and Title III of the ADA.

46.     If Defendant addresses (i.e., fixes and/or repairs) the accessibility errors on their Website, Plaintiff intends to return to Defendant's Website. Because Plaintiff was unable to complete an order on Defendant's Website without the assistance of a sighted individual, Defendant has denied Plaintiff full and equal access to Defendant's goods and services on account of Plaintiff's disability.

47.     Defendant has been aware of the need to provide full and equal access to all customers that use the Website.

48.     Defendant has been aware of the barriers to effective communication within the Website that prevent visually impaired and blind individuals from comprehending information presented therein.

49.     Places of public accommodation under the PWDCRA and ADA must ensure that their goods or services are fully and equally provided to individuals with disabilities, who shall not be discriminated against solely on the basis of disability.

50.     Defendant has not provided full and equal access to enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and Defendant's physical location in contravention of the PWDCRA and ADA.

51.     The purpose of the PWDCRA and ADA are to provide an equal opportunity for individuals with disabilities to participate in all aspects of American civic and economic life. That mandate extends to internet e-commerce websites including Defendant's Website.

52.     Plaintiff is a disabled individual who is interested in patronizing and intends to access the Website once the Website's access barriers are removed or remedied.

53.     Plaintiff, like millions of other visually impaired and blind individuals, finds traveling outside of his home can be a difficult, hazardous, frightening, frustrating, and/or a confusing experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

54.     The fact that Plaintiff could not communicate with or within the Website left him feeling isolated, frustrated, and humiliated, and gave him a sense of segregation, as he is unable to participate in the same shopping experience, with the same access to the goods and services as provided at the Website and in Defendant's physical locations, as the non-visually disabled public.

55.     Plaintiff has been denied the full enjoyment of the facilities, goods, and services of https://www.saintjohnsresort.com/, and deprived of the opportunity to participate and enjoy the facilities, goods, and services offered by Defendant's brick and mortar location as a result of accessibility errors encountered on the Website.

56.     The barriers that exist on the Website resulted in discriminatory and unequal treatment to individuals with visual disabilities, including Plaintiff.

## COUNT I – VIOLATION OF THE PWDCRA

57.     Plaintiff incorporates by reference paragraphs 1 through 56 as if fully stated herein.

58.     Plaintiff is an individual with a visual impairment that substantially limits a major life activity and qualifies as a disability within the meaning of the PWDCRA.

59.     The PWDCRA guarantees the opportunity to obtain the "full and equal utilization of public accommodations" without discrimination as a civil right. MCL 37.1102(1).

60.     A place of public accommodation means a business, educational institution, refreshment, entertainment, recreation, health, or transportation facility of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public. MCL 37.1301(a).

61.     Defendant's place of business is a place of public accommodation under the PWDCRA because it is a business whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public. MCL 37.1301(a).

62.     Defendant's Website is also a place of public accommodation under the PWDCRA because it provides the general public with the ability to locate and learn about Defendant's physical location and purchase goods and/or services at Defendant's physical location. The Website is thus an extension of, gateway to, and an intangible "service, privilege, and advantage" of Defendant's physical place of public accommodation within the meaning of MCL 37.1302(a).

63.     The PWDCRA expressly states:

> except where permitted by law, a person shall not...deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids (e.g., screen-reading software). MCL 37.1302(a).

64.     Defendant's Website functions as an essential gateway to Defendant's place of public accommodation because it is the primary means by which prospective customers, including Plaintiff, can access information regarding Defendant's goods, services, facilities, privileges, and accommodations as well as complete reservations for a hotel room.

65.     The PWDCRA applies to all aspects of the provision of goods and services by a place of public accommodation, including the use of digital platforms when those digital platforms

11

are directly connected to the corresponding physical facilities and are essential to accessing and utilizing the facilities' services.

66.     Defendant's Website is designed, constructed, managed, operated, and/or maintained in a manner that is inaccessible to Plaintiff and other similarly situated individuals because it is not compatible with commonly used screen-reader software. The accessibility errors on Defendant's Website make the goods and services offered therein unavailable to Plaintiff.

67.     Defendant's Website contains specific, remediable barriers that contravene widely recognized accessibility standards as identified in detail above. The accessibility barriers directly denied Plaintiff the full and equal enjoyment of Defendant's goods and services by materially burdening tasks that sighted users can perform routinely.

68.     Plaintiff attempted to use Defendant's Website on August 25, 2025, and on September 15, 2025. Because of the accessibility errors described in detail above, Plaintiff was precluded from perceiving or understanding Defendant's Website in a meaningful way, let alone completing a reservation for a hotel room due to the accessibility errors present on the Website. This constituted an unlawful denial of equal access to Defendant's goods, services, and accommodations.

69.     As a direct and proximate result of Defendant's unlawful denial of equal access, Plaintiff has been denied the full and equal enjoyment of Defendant's goods, services, and accommodations. Plaintiff has suffered and continues to suffer both economic and dignitary harms. Plaintiff was unable to independently complete a reservation on Defendant's Website, forcing reliance on others or alternative arrangements, and he experienced significant emotional distress, frustration, humiliation, embarrassment, and a deepened sense of social exclusion. Defendant's

refusal to provide an accessible website has reinforced and exacerbated Plaintiff's sense of segregation and exclusion, intensifying the dignitary harms flowing from his disability.

70.    Plaintiff is entitled to relief under MCL 37.1606, including injunctive relief compelling Defendant to bring its Website into compliance with generally accepted accessibility standards, such as Web Content Accessibility Guidelines ("WCAG") 2.1 AA, as well as monetary relief for emotional injuries and reasonable attorney's fees.

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

    a. Enter an Order requiring Defendant to promptly bring its Website into compliance with WCAG 2.1 AA accessibility standards to ensure that its online services remain accessible to individuals who are blind or visually impaired;

    b. Damages for the dignitary harms, emotional distress, frustration, humiliation, embarrassment, loss of independence, and exacerbated feelings of segregation and exclusion Plaintiff has suffered and continues to suffer as a direct result of Defendant's unlawful denial of equal access;

    c. An award of reasonable attorney fees, costs, and litigation expenses;

    d. Pre- and post-judgment interest;

    e. Any other relief as the Court deems fair and just.

## COUNT II – VIOLATION OF THE ADA

71.    Plaintiff incorporates by reference paragraphs 1 through 70 as if fully stated herein.

72.    Defendant operates a place of public accommodation within the meaning of 42 U.S.C. §12181(7)(A)-(B), because it is an "inn, hotel, or other place of lodging," and because it is "a restaurant, bar, or other establishment serving food or drink;" accordingly, Defendant is subject to the provisions of the ADA.

73.    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of

F&S Law

13

the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

74.     Defendant's Website is covered under Title III of the ADA because it provides the general public with the ability to locate and learn about Defendant's physical place of business and to purchase goods and services offered in, from, and through Defendant's place of business. The Website is an extension of, gateway to, and intangible "service, privilege, and advantage" of Defendant's physical location, and is therefore a covered service of a place of public accommodation under 42 U.S.C. § 12182(a).

75.     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that are equal to the opportunities afforded to other non-disabled individuals.

76.     Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

77.     In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services,

unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden."

78.     Defendant's non-compliant Website denies blind and visually impaired individuals full and equal access to, and enjoyment of, the goods, information, and services that Defendant has made available to the public on the Website and in its physical location in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

79.     Defendant has made insufficient material changes or improvements to the Website to enable its full and equal use and enjoyment by, and accessibility to, blind and visually disabled persons such as Plaintiff.

80.     Violations may be present and on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

81.     There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other business entities in making their websites accessible. Incorporating basic accessibility improvements as described in WCAG 2.1 AA would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden on Defendant.

82.     Upon information and belief, Defendant's Website is substantially noncompliant with the current WCAG 2.1 AA guidelines and fails to be perceivable, operable, robust, understandable, or accessible by blind and/or visually disabled individuals such as Plaintiff.

83.     Defendant has and continues to violate the ADA by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of screen reader

software to comprehend and access internet websites. The violations within the Website are ongoing.

84.     Part 36 of Title 28 of the C.F.R. was designed and implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

85.     Defendant's Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication and thus violates the ADA.

86.     Regulatory guidance confirms that Title III specifically requires that places of public accommodation provide effective communication via auxiliary aids and services to individuals with disabilities. According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems."

87.     28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

88.     Public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

89.     As a direct and proximate result of Defendant's failure to provide an ADA compliant Website with a nexus to its brick-and-mortar location, Plaintiff has suffered an injury-

in-fact by being denied full and equal access to, and enjoyment of, Defendant's Website and physical place of business. Plaintiff has experienced dignitary and emotional harms, including frustration, humiliation, and loss of independence. Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 to remedy the ongoing disability discrimination.

90.     This Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief.

91.     Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

a.  A permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq.;

b.  A permanent injunction requiring Defendant to take the steps necessary to make its Website fully compliant with the requirements set forth in the ADA and its implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.  A declaration that Defendant owns, maintains and/or operates its Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182;

d.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

e.  Such other and further relief as this Court deems fair and just.

## COUNT III – DECLARATORY RELIEF

92.     Plaintiff incorporates by reference paragraphs 1 through 91 as if fully stated herein.

93.     An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that its Website contains

F&S Law

accessibility barriers denying blind customers full and equal access to the products, services, and facilities of its Website, which Defendant owns, operates, controls, and fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq.

94.     A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

a.  A declaration that Defendant owns, maintains and/or operates its Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by the Persons with Disabilities Civil Rights Act ("PWDCRA") and the laws of Michigan;

b.  A declaration that Defendant owns, maintains and/or operates its Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by the Americans with Disabilities Act ("ADA");

c.  A permanent injunction to prohibit Defendant from violating the PWDCRA and ADA;

d.  A permanent injunction requiring Defendant to take all the steps necessary to make its Website fully compliant with the requirements set forth in the ADA, its implementing regulations, and WCAG 2.1 AA so that the Website is readily accessible to and usable by blind individuals;

e.  Any other relief the Court deems just, equitable, or appropriate.

September 26, 2025

William R. Frush (P87016)
F&S LAW, PLLC
Attorney for Plaintiff
6670 Kalamazoo Ave., SE, Ste. D Unit 1118
Grand Rapids, MI 49508
wfrush@fslawpllc.com

(248) 675-9192

F&S Law